UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RASHAUN JOHNSON-PEEL,

Petitioner,

CASE NO. 2:09-CV-14233

v.

JUDGE VICTORIA A. ROBERTS
MAGISTRATE JUDGE PAUL J. KOMIVES

DEBRA SCUTT,

Respondent.

_____/

# REPORT AND RECOMMENDATION

*Table of Contents*

I.    RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
II.   REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
      A.   *Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
      B.   *Factual Background Underlying Petitioner's Conviction* . . . . . . . . . . . . . . . . . . . . . . . 3
      C.   *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
      D.   *Ineffective Assistance of Counsel (Claims I and II)* . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
           1.   *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
           2.   *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
                a. Failure to Request Polling of the Jury . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
                b. Failure to File Motion in Limine    . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
                c. Failure to Request Jury Instructions   . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
                d. Failure to Call Bell . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
                e. Prejudicial Comments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
                f. Failure to Object to Prosecutorial Misconduct . . . . . . . . . . . . . . . . . . . . . 16
      E.   *Prosecutorial Misconduct (Claim II)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
           1.   *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
           2.   *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
      F.   *Sentencing (Claim III)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
      G.   *Sufficiency of the Evidence (Claim IV)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
           1.   *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
           2.   *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
      H.   *Recommendation Regarding Certificate of Appealability* . . . . . . . . . . . . . . . . . . . . . 24
           1.   *Legal Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
           2.   *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
      I.   *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
III.  NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

I.      <u>RECOMMENDATION</u>: The Court should deny petitioner's application for the writ of habeas corpus and should deny petitioner a certificate of appealability.

II.     <u>REPORT</u>:

A.      *Procedural History*

1.      Petitioner Rashaun Johnson-Peel is a state prisoner, currently confined at the G. Robert Cotton Correctional Facility in Jackson, Michigan.

2.      Petitioner was convicted of assault with intent to commit murder, MICH. COMP. LAWS § 750.83, armed robbery, MICH. COMP. LAWS § 750.529, and two counts of possession of a firearm during the commission of a felony, MICH. COMP. LAWS § 750.229(b), following a jury trial in the Oakland County Circuit Court.  On March 10, 2006, he was sentenced to a term of 18 to 30 years' imprisonment.

3.      Petitioner appealed as of right to the Michigan Court of Appeals raising, through counsel, the following claims:

I.      TRIAL COUNSEL PROVIDED CONSTITUTIONALLY INEFFECTIVE ASSISTANCE OF HIS REPRESENTATION OF PETITIONER WHERE HE: FAILED TO REQUEST THAT THE JURY BE POLLED TO ENSURE THAT THE GUILTY VERDICT WAS UNANIMOUS, FAILED TO MAKE PRETRIAL MOTIONS IN LIMINE AS TO TWO INMATE-INFORMANTS WITNESSES, FAILED TO REQUEST THE "MISSING WITNESS" INSTRUCTION AND "CHARACTER EVIDENCE RE: WITNESS CREDIBILITY" INSTRUCTION, MADE AN IMPROPER AND PREJUDICIAL REMARKS DURING CLOSING ARGUMENT, AND FAILED TO REQUEST A MISTRIAL ON THE BASIS OF TESTIMONY THAT PETITIONER WAS INCARCERATED.

II.     PETITIONER WAS DENIED HIS RIGHT TO DUE PROCESS AND A FAIR TRIAL AS A RESULT OF THE PROSECUTOR'S MISCONDUCT AND COUNSEL WAS INEFFECTIVE IN FAILING TO OBJECT TO THAT MISCONDUCT.

III.    PETITIONER IS ENTITLED TO RE-SENTENCING WHERE HIS

2

                SENTENCES WERE INCREASED BASED ON FACTS NEITHER PROVEN TO A JURY BEYOND A REASONABLE DOUBT NOR ADMITTED BY DEFENDANT, IN VIOLATION OF THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION.

IV.      THE TRIAL COURT ABUSED ITS DISCRETION BY NOT GRANTING PETITIONER'S MOTION FOR NEW TRIAL WHERE THE LOWER COURT RECORD WAS INSUFFICIENT TO SUPPORT THE JURY'S VERDICT, AND A MISCARRIAGE OF JUSTICE OCCURRED WHERE PETITIONER'S PURPORTED CONFESSION WAS ONLY SUPPORTED BY TESTIMONY OF TWO INCARCERATED INFORMANTS AND AN ACQUAINTANCE OF DEFENDANT'S THAT WERE DEBILITATED ON CROSS EXAMINATION.

The court of appeals found no merit to petitioner's claims, and affirmed his conviction and sentence. *See People v. Johnson-Peel*, No. 271478, 2008 WL 942016 (Mich. Ct. App. 2008) (per curiam).

4.      Petitioner, proceeding with counsel, sought leave to appeal these four issues to the Michigan Supreme Court. The Supreme Court denied petitioner's application for leave to appeal in a standard order. *See People v. Johnson-Peel*, 482 Mich. 1034, 757 N.W.2d 83 (2008).

5.      Petitioner, proceeding with counsel, filed the instant application for a writ of habeas corpus on October 28, 2009. As grounds for the writ of habeas corpus, he raises the four claims that he raised in the state courts.

6.      Respondent filed her answer on June 30, 2010. She contends that petitioner's claims are either without merit or state law claims which are not cognizable on habeas review.

B.    *Factual Background Underlying Petitioner's Conviction*

The evidence underlying petitioner's convictions was accurately summarized by the Michigan Court of Appeals:

                On June 20, 2005, the owner of a party store in Southfield was shot during

3

a robbery. The victim testified that a young man ran out of the store with a bag of stolen DVDs and candy. The victim confronted the young man in the parking lot and escorted him back into the store. As the victim prepared to phone the police, he was shot in the head and the gunshot severely limited his vision. The principal issue at trial was Johnson-Peel's identity as the perpetrator. The victim could not identify the perpetrator, but thought he was an occasional customer. A few days after the shooting, the victim told the police that the perpetrator might be William Dominic Bell, the son of one of his more frequent customers. But about two months later, the victim remembered the perpetrator being referred to as "Shaun" when he came to the store in the past.

While investigating Bell, Southfield police officers received information that led them to refocus their investigation on Johnson-Peel. After the police arrested Johnson-Peel, he told a jail inmate, Germaine Jackson, that he had been charged with attempted murder and that he shot a foreign person in the face with a .22 caliber gun. Johnson-Peel told another jail inmate, Kirk Korecki, that he was not worried about being charged with assault with intent to commit murder because, even though he shot the gentleman, the gun would never be found. At trial, Johnson-Peel presented an alibi defense and claimed that the prosecution witnesses who linked him to the shooting were not credible.

*Johnson-Peel*, 2008 WL 942016, at *1.

C.    *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by

the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No.

104-132, 110 Stat. 1214 (Apr. 24, 1996).  *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997).

Amongst other amendments, the AEDPA amended the substantive standards for granting habeas

relief by providing:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing

legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp.2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

D.      *Ineffective Assistance of Counsel (Claims I and II)*

Petitioner first claims that his trial counsel was ineffective in a number of respects. Specifically, he contends that counsel was ineffective for: (1) failing to request a poll of the jury; (2) failing to file a motion in limine; (3) failing to request various jury instructions; (4) failing to call Bell as a witness; (5) making improper remarks during closing argument; and (6) failing to object to prosecutorial misconduct.[1]  The Court should conclude that petitioner is not entitled to habeas

---

[1]In the heading for his first claim, petitioner includes as a basis for his ineffective assistance claim counsel's failure to request a mistrial on the basis of testimony that petitioner was incarcerated. However, petitioner presents no argument with respect to this assertion in the body of his brief, nor does he identify the portion of the transcript reflecting a reference to his incarceration. Because "petitioner provides no argument, citation to relevant authority, references to the record, or any facts in support of this claim," *Smith v. Bell*, No. 3:99-0731, 2005 WL 2416504, at *38 (M.D. Tenn. Sept. 30,

relief on these claims.

    1.     *Clearly Established Law*

The Sixth Amendment right to counsel and the right to effective assistance of counsel protect the fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense. *Id*. at 687. These two components are mixed questions of law and fact. *Id*. at 698. Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id*. at 697. If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id*. With respect to the performance prong of the *Strickland* test, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id*. at 689; *see also O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id*. at 695. It is petitioner's burden to establish the

---

2005), the Court need not address this conclusory claim.

elements of his ineffective assistance of counsel claim.  *See United States v. Pierce*, 63 F.3d 818, 833 (6th Cir. 1995) (petitioner bears the burden of establishing counsel's ineffectiveness); *Lewis v. Alexander*, 11 F.3d 1349, 1352 (6th Cir. 1993) (same).

As the Supreme Court has recently explained, *Strickland* establishes a high burden that is difficult to meet, made more so when the deference required by § 2254(d)(1) is applied to review a state court's application of *Strickland*:

> "Surmounting Strickland's high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. ----, ----, 130 S.Ct. 1473, 1485, 176 L.Ed.2d 284 (2010). An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve. *Strickland*, 466 U.S., at 689-690, 104 S.Ct. 2052. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." *Id.*, at 689, 104 S.Ct. 2052; *see also Bell v. Cone*, 535 U.S. 685, 702, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002); *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. *Strickland*, 466 U.S., at 690, 104 S.Ct. 2052.
>
> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id.*, at 689, 104 S.Ct. 2052; *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S., at ----, 129 S.Ct. at 1420. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at ----, 129 S.Ct. at 1420 . Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

*Harrington v. Richter*, 131 S. Ct. 770, 788 (2011).

2.    *Analysis*

8

*a.  Failure to Request Polling of the Jury*

Petitioner first contends that counsel was ineffective for failing to request a polling of the jury at the time of its verdict.  Petitioner contends that there was inferential evidence that the jury verdict may not have been unanimous which should have lead counsel to request a polling, because the foreperson did not want to read the verdict and because the juror who read the verdict did not explicitly state that the verdict was unanimous.  The Michigan Court of Appeals rejected this claim, concluding that petitioner had failed to establish prejudice.  The court reasoned that because "it can be presumed that the jury followed the trial court's instruction that the verdict must be unanimous, . . . nothing about the foreperson's request to have another juror read the verdict form supports an inference that the jury did not reach a unanimous verdict."  *Johnson-Peel*, 2008 WL 942016, at *2.  This determination was reasonable.

As the court of appeals correctly observed, it is well established that a court must presume that a jury follows the instructions given by the trial court.  *See Richardson v. Marsh*, 481 U.S. 200, 206 (1987); *see also*, *Shannon v. United States*, 512 U.S. 573, 585 (1994); *United States v. Olano*, 507 U.S. 725, 740 (1993); *Francis v. Franklin*, 471 U.S. 307, 324 n.9 (1985).  Here, there is no indication that the jury failed to follow the trial court's instruction that its verdict be unanimous.  The mere fact that the foreperson did not wish to read the verdict creates no inference that the foreperson disagreed with the verdict, nor does the fact that the juror who read the verdict failed to explicitly state that the verdict was unanimous.  No juror independently expressed any disagreement with the verdict, notwithstanding that the trial court reiterated the unanimity requirement immediately before the verdict was read.  And because there is nothing to suggest that the jury's verdict was not, in fact, unanimous, petitioner cannot show that he was prejudiced by counsel's

failure to request a polling of the jury. *See United States v. Ambo*, 64 Fed. Appx. 416 (5th Cir. 2003); *United States v. Costa*, 691 F.2d 1358, 1363-64 (11th Cir. 1982); *Hansford v. Angelone*, 244 F. Supp. 2d 606, 613 (E.D. Va. 2002).

### b. Failure to File Motion in Limine

Petitioner next contends that counsel was ineffective for failing to file a motion in limine with respect to the testimony of two jailhouse informants, who testified that petitioner confessed his crimes to them. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

Although petitioner characterizes his claim as one involving counsel's failure to file a motion in limine, he does not assert any basis on which the testimony of the two witnesses could have been excluded. Rather, the body of his brief argues that counsel was ineffective by failing to impeach the informants with their recorded interrogations and by failing to admit as evidence the entire tapes of those interrogations. The Michigan Court of Appeals rejected this claim, explaining that counsel impeached the witnesses with cross-examination about the contents of their statements, and attacked their credibility during closing argument. *See Johnson-Peel*, 2008 WL 942016, at *3. This determination was reasonable.

"[C]ourts generally entrust cross-examination techniques, like other matters of trial strategy, to the professional discretion of counsel." *Dell v. Straub,* 194 F. Supp. 2d 629, 651 (E.D. Mich. 2002) (Friedman, J.). "Impeachment strategy is a matter of trial tactics, and tactical decisions are not ineffective assistance of counsel simply because in retrospect better tactics may have been available." *Id.; accord Millender v. Adams*, 187 F. Supp. 2d 852, 872 (E.D. Mich. 2002) (Rosen, J.). Because "the conduct of examination and cross-examination is entrusted to the judgment of the

10

lawyer," a reviewing court "on a cold record should not second-guess such decisions unless there is no strategic or tactical justification for the course taken." *United States v. Luciano*, 158 F.3d 655, 660 (2d Cir. 1998). Here, the record shows that counsel ably and extensively cross-examined the two jailhouse informants regarding the contents of their statements and their general credibility. That some particular avenues of questioning were not fully explored does not support a finding that counsel's performance was deficient. *See Poyner v. Iowa*, 990 F.2d 435, 438 (8th Cir. 1993) (counsel not ineffective for failing to "develop every bit of testimony through all available inconsistent statements."); *Millender*, 187 F. Supp. 2d at 872; *Johnson v. Hofbauer,* 159 F. Supp. 2d 582, 607 (E.D. Mich. 2001) (Tarnow, J.). In light of the double layer of deference mandated by *Harrington*, petitioner has failed to show that he is entitled to habeas relief on this claim.

### c.  Failure to Request Jury Instructions

Petitioner next contends that counsel was ineffective for failing to request various jury instructions. Specifically, he contends counsel should have requested: (1) a missing witness instruction in light of the prosecutor's failure to produce Bell at trial; (2) a character evidence instruction; and (3) an instruction on impeachment by prior conviction. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

With respect to the missing witness instruction and character evidence instruction, petitioner cannot show that counsel was deficient because the instructions were not warranted under state law. The Michigan Court of Appeals explained that because the prosecution had amended its witness list to remove Bell as a witness, its failure to call Bell at trial did not warrant a missing witness instruction. *See Johnson-Peel*, 2008 WL 942016, at *3. Similarly, the court of appeals concluded that there was no character evidence presented at trial which would have supported giving a

character evidence instruction. *See id.* at *4. In analyzing petitioner's ineffective assistance of counsel claims, these expressions of state law are binding on this Court. *See Basile v. Bowersox*, 125 F. Supp. 2d 930, 960 (E.D. Mo. 1999). *See generally*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Sarausad v. Porter*, 503 F.3d 822, 824 (9th Cir. 2007) ("A determination of state law by a state appellate court is . . . binding in a federal habeas action."). Counsel cannot be deemed ineffective for failing to request an instruction which was not appropriate under state law. *See Mitzel v. Tate*, 267 F.3d 524, 538 (6th Cir. 2001).

With respect to the impeachment by prior conviction instruction, the trial court did give such an instruction with respect to the testimony of Korecki, who testified that he had a prior conviction involving theft or dishonesty. With respect to Jackson, however, there was no evidence that his prior crimes involved an element of theft or dishonesty, and thus such an instruction would not have been appropriate as to him. *See Johnson-Peel*, 2008 WL 942016, at *4. In any event, the trial court extensively instructed the jury on evaluating witness testimony, including by considering motives to lie. *See* Trial Tr., dated 2/1/06, at 56-57. In light of this instruction, the specific instruction given with respect to Korecki, and the extensive testimony elicited from Jackson and Korecki on cross-examination regarding their motives to lie, the jury was well equipped to assess the credibility of these witnesses, and there is not a reasonable probability that the result of the proceeding would have been different had the court given an explicit instruction on impeachment by prior conviction. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### d. Failure to Call Bell

Petitioner next contends that counsel was ineffective for failing to call Bell as a witness. He argues that Bell was initially the prime suspect, and that a search warrant executed on Bell's home

12

yielded a handgun and a red cap consistent with the one worn by the shooter. The court of appeals rejected this claim, reasoning that petitioner had failed to make an offer of proof regarding counsel's investigation of Bell and what favorable testimony Bell could have provided, and that petitioner's "unsupported speculation that Bell would have implicated himself in the crime is insufficient to warrant a remand." *Johnson-Peel*, 2008 WL 942016, at *3. This determination was reasonable.

"Complaints of uncalled witnesses are not favored in federal habeas review." *Marler v. Blackburn*, 777 F.2d 1007, 1010 (5th Cir. 1985); *Aponte v. Scully*, 740 F. Supp. 153, 158 (E.D.N.Y. 1990). As one court has explained:

> The decision whether to call any witnesses on behalf of the defendant, and if so which witnesses to call, is a tactical decision of the sort engaged in by defense attorneys in almost every trial. [Defendant] does not identify any witnesses that his counsel should have called who would have been helpful. Defense counsel's conduct in this regard appears to fall within the wide range of reasonable professional representation. Decisions whether to engage in cross examination, and if so to what extent and in what manner, are similarly strategic in nature.

*United States v. Nersesian*, 824 F.2d 1294, 1321 (2d Cir. 1987); *accord Reese v. Fulcomer*, 946 F.2d 247, 257 (3d Cir. 1991) (counsel's performance not deficient where counsel did not call alibi witness whose testimony could have been damaging); *United States v. Porter*, 924 F.2d 395, 397 (1st Cir. 1991) (decision not to call witnesses who could have incriminated defendant within scope of informed professional judgment). Further, it is petitioner's burden to establish the elements of his ineffective assistance of counsel claim. *See United States v. Pierce*, 63 F.3d 818, 833 (6th Cir. 1995) (petitioner bears the burden of establishing counsel's ineffectiveness); *Lewis v. Alexander*, 11 F.3d 1349, 1352 (6th Cir. 1993) (same). Thus, "a petition for habeas corpus relief based on counsel's failure to call witnesses must present this evidence in the form of the actual testimony by the witness or affidavits." *United States ex rel. Townsend v. Young*, No. 01 C 0800, 2001 WL 910387, at *5

13

(N.D. Ill. Aug. 8, 2001) (citing *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991)); *see also*, *Harrison v. Quarterman*, 496 F.3d 419, 428 (5th Cir. 2007); *Dows v. Woods*, 211 F.3d 480, 486 (9th Cir. 2000).

Here, there was a reasonable strategic basis for counsel to decline to call Bell was a witness at trial. During both opening statement and closing argument, counsel extensively pointed the finger at Bell, detailing the evidence of his initial status as the suspect based on the victim's identification, his admission to being at the store on the day of the crime, and the recovery of the gun and stocking cap in his home. *See* Trial Tr., dated 1/26/06, at 13-14, 17-18, 21-22; *id.*, dated 2/1/06, at 27-28. And counsel elicited all of this information on cross-examination of various witnesses. *See id.*, dated 1/27/06, at 6-7; *id.*, dated 1/31/06, at 196-97; *id.*, dated 1/30/06, at 309-23. Because counsel developed significant evidence to implicate an alternative suspect, it was a reasonable trial strategy to not call that suspect and give him the chance to explain himself, an opportunity which would have lessened, rather then increased, his plausibility as an alternative suspect. *See Beatty v. Jones*, 2010 WL 3873860, at *18 (D. Colo. Sept. 29, 2010); *cf. Stewart v. Wolfenbarger*, 468 F.3d 338, 352-53 (6th Cir. 2006); *Battle v. Delo*, 19 F.3d 1547, 1555 (8th Cir. 1994). Further, petitioner cannot establish prejudice, because there is absolutely no indication that Bell would have admitted culpability if called at trial, or that there is a reasonable probability that the jury would have reached a different conclusion had Bell testified. *See Beatty*, 2010 WL 3873860, at *18. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### *e. Prejudicial Comments*

Petitioner next contends that counsel was ineffective for making various prejudicial comments. First, during the cross-examination of Henry Francis, counsel elicited from Francis

14

testimony denying that petitioner had admitted to him shooting somebody. This was in direct contradiction to Francis's testimony at the preliminary examination. During this questioning, counsel queried the court, "Judge, I don't know if we need to get this man a lawyer because I think . . . ." Trial Tr., dated 1/26/01, at 186. The trial judge immediately cut-off counsel, stating: "Counsel, that's outside the presence of the jury. I don't know what the question is going to be." *Id.* Petitioner contends that counsel's statement was prejudicial because it suggested that Henry, who had testified favorably to petitioner at trial, had committed perjury. This claim is without merit.

First, it is far from clear that the jury would have drawn the conclusion that counsel was indicating Francis had committed perjury. Counsel did not so indicate in his statement to the court. Rather, counsel only questioned whether it was appropriate to secure a lawyer for Francis. While a trained attorney would infer from counsel's question that counsel had concluded that Francis committed perjury, it is doubtful that a lay juror would have drawn the same inference. In any event, because Francis's trial testimony directly contradicted his preliminary examination testimony, it was clear to all that Francis had in fact lied at some point. The only question was whether he had lied at the preliminary examination or at trial. Nothing in counsel's question suggested that Francis lied at trial (when he testified favorably to petitioner) rather than at the preliminary examination (when he testified favorably to the prosecution), and indeed counsel argued during closing argument that Francis testified truthfully at trial. In light of the limited nature of counsel's inquiry to the court and the fact that it was apparent that Francis had lied either at the preliminary examination or at trial, there is not a reasonably probability that the result of the proceeding would have been different had counsel not inquired about obtaining an attorney for Francis.

Likewise, petitioner cannot show that he was prejudiced by counsel's closing argument.

Counsel began his closing argument by apologizing to the jury for the length of the trial, stating that he too was tired and invoking his family and children. This argument prompted the trial judge to admonish counsel to stick to the facts of the case, to which counsel responded that he should be permitted to structure his argument as he saw fit. *See* Trial Tr., dated 2/1/06, at 18-20. Contrary to petitioner's argument, counsel's statements neither criticized the court nor suggested that the jury's role was unimportant. Rather, counsel's argument was an attempt to explain to the jury his role in the proceedings, and to explain why he engaged in an extensive cross-examination of the witnesses. His response to the court was respectful, and was a fair argument that he should be given latitude in conducting his closing argument. Petitioner has failed to explain how this brief exchange between counsel and the court affected the jury's verdict, which was based on the extensive witness testimony in the case. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### f. Failure to Object to Prosecutorial Misconduct

Finally, petitioner contends that counsel was ineffective for failing to object to the prosecutor's improper statement during closing argument. However, as explained in the following section, the prosecutor's comment was not improper. Counsel cannot be deemed ineffective for failing to raise a meritless objection. *See Bradley v. Birkett*, 192 Fed. Appx. 468, 475 (6th Cir. 2006); *Anderson v. Goeke*, 44 F.3d 675, 680 (8th Cir. 1995); *Burnett v. Collins*, 982 F.2d 922, 929 (5th Cir. 1993). Because petitioner's underlying prosecutorial misconduct claim is without merit, petitioner cannot show that his counsel was ineffective for failing to object. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

E.    *Prosecutorial Misconduct (Claim II)*

Petitioner next contends that he was denied a fair trial by prosecutorial misconduct. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

1.    *Clearly Established Law*

For habeas relief to be warranted on the basis of prosecutorial misconduct, it is not enough that the prosecutor's conduct was "undesirable or even universally condemned." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). Rather, the misconduct must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* (internal quotation omitted). "[T]he touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982). In determining whether the prosecutor's conduct was so egregious as to warrant habeas relief, a court should consider "the degree to which the remarks complained of have a tendency to mislead the jury and to prejudice the accused; whether they are isolated or extensive; whether they were deliberately or accidentally placed before the jury; and the strength of the competent proof to establish the guilt of the accused." *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (internal quotations and citations omitted). In sum, to constitute a denial of due process the prosecutor's conduct must be "so pronounced and persistent that it permeates the entire atmosphere of the trial." *Id.* (internal quotation omitted).

2.    *Analysis*

Petitioner contends that the prosecutor argued facts not in evidence when he stated that petitioner and Bell were cousins. *See* Trial Tr., dated 2/1/06, at 5. The Michigan Court of Appeals, reviewing the claim for plain error,[2] rejected it because there was evidence at trial to support the

---

[2]The court of appeals reviewed petitioner's claim for plain error because he had failed to object to the prosecutor's comment at trial. *See Johnson-Peel*, 2008 WL 942016, at *5. For this reason, respondent contends that petitioner's claim is barred by the procedural default doctrine. Because, as explained below, the claim is meritless, the Court need not address the procedural default issue.

prosecutor's argument.  *See Johnson-Peel*, 2008 WL 942016, at *5.  This determination was reasonable.  At trial, Officer James Dziedzic testified that Bell and petitioner are cousins.  *See* Trial Tr., dated 1/31/06, at 62-63.  In light of this testimony, the prosecutor's argument was proper.  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

F.      *Sentencing (Claim III)*

Petitioner next contends that the trial court based its sentence on facts which were not proved by the prosecution beyond a reasonable doubt, in violation of the Supreme Court's decisions in *Blakely v. Washington*, 542 U.S. 296 (2004) and *Apprendi v. New Jersey*, 530 U.S. 466 (2000).  In *Apprendi*, the Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  *Apprendi*, 530 U.S. at 490.  In *Blakely*, the Court considered the applicability of *Apprendi* to a state sentencing guidelines scheme similar to the United States Sentencing Guidelines.  The state in that case argued that guidelines findings were not prohibited by *Apprendi* because *Apprendi* prohibited only factual findings at sentencing which increased the statutory maximum penalty to which the defendant was exposed.  The Court in *Blakely* rejected this argument and struck down the state guidelines scheme, explaining that:

> the "statutory maximum" for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*  In other words, the relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings. When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts "which the law makes essential to the punishment," and the judge exceeds his proper authority.

*Blakely*, 542 U.S. at 303-04 (citations omitted) (emphasis in original).  Finally, in *United States v. Booker*, 543 U.S. 220 (2005), the Court took the step logically suggested by *Blakely*, concluding that

18

the United States Sentencing Guidelines are unconstitutional under *Apprendi* because they allow federal judges to impose sentences based on facts not found by a jury beyond a reasonable doubt. *See Booker*, 543 U.S. at 233, 237-43.

*Blakely* and *Apprendi*, however, are inapplicable here. Michigan law provides for an indeterminate sentencing scheme, unlike the determinate sentencing schemes at issue in *Blakely* and *Booker*. Under Michigan law the defendant is given a sentence with a minimum and a maximum sentence. The maximum sentence is not determined by the trial judge but is set by law. *See People v. Drohan,* 475 Mich. 140, 160-61, 715 N.W.2d 778, 789-90 (2006); *People v. Claypool,* 470 Mich. 715, 730 n.14, 684 N.W.2d 278, 286 n.14 (2004); MICH. COMP. LAWS § 769.8. "[M]ichigan's sentencing guidelines, unlike the Washington guidelines at issue in *Blakely*, create a range within which the trial court must set the minimum sentence." *Drohan,* 475 Mich. at 161, 715 N.W.2d at 790. Under Michigan law, only the minimum sentence must presumptively be set within the appropriate sentencing guidelines range. *See People v. Babcock,* 469 Mich. 247, 255 n.7, 666 N.W.2d 231, 236 n.7 (2003) (discussing MICH. COMP. LAWS § 769.34(2)). Under Michigan law, the trial judge sets the minimum sentence, but can never exceed the maximum sentence. *See Claypool,* 470 Mich. at 730 n.14, 684 N.W.2d at 286 n.14.

*Blakely* is inapplicable here because *Blakely* is concerned only with the *maximum* penalty which is authorized by a jury's findings or a defendant's plea: if some additional factor increases the defendant's penalty beyond that which could be imposed solely on the basis of the jury's findings or the defendant's plea, *Blakely* requires that those facts be found by a jury beyond a reasonable doubt (or be themselves pleaded to by a defendant). As explained above, unlike the guidelines scheme at issue in *Blakely*, the Michigan sentence guidelines help determine only the

minimum portion of a defendant's indeterminate sentence.  The maximum is, in every case, the

statutory maximum authorized by law.  *See Claypool*, 470 Mich. at 730 n.14, 684 N.W.2d at 286

n.14; MICH. COMP. LAWS § 769.8. Petitioner's conviction on the CSC-I charges, therefore, contained

all of the factual findings necessary to impose the statutory maximum (life imprisonment) on those

charges.  *See Drohan*, 475 Mich. at 162, 715 N.W.2d at 790 ("Thus, the trial court's power to

impose a sentence is always derived from the jury's verdict, because the 'maximum-minimum'

sentence will always fall within the range authorized by the jury's verdict.").

This being the case, petitioner's sentence did not violate *Blakely*.  The Supreme Court has

repeatedly made clear that the *Apprendi* rule is concerned only with the maximum sentence which

is authorized by a jury's verdict or a defendant's plea.  As the Supreme Court explained in *Harris*

*v. United States*, 536 U.S. 545 (2002):

> *Apprendi* said that any fact extending the defendant's sentence beyond the maximum
> authorized by the jury's verdict would have been considered an element of an
> aggravated crime–and thus the domain of the jury–by those who framed the Bill of
> Rights.  The same cannot be said of a fact increasing the mandatory minimum (but
> not extending the sentence beyond the statutory maximum), for the jury's verdict
> authorized the judge to impose the minimum with or without the finding.

*Harris*, 536 U.S. at 557.  This distinction is important because the only issue under the Sixth

Amendment is whether the judge is impinging on the role of the jury.  For this reason, the Court

explicitly excepted indeterminate sentencing schemes such as Michigan's from its holding in

*Blakely*.  Rejecting an argument raised by Justice O'Connor in dissent, the Court explained:

> Justice O'Connor argues that, because determinate sentencing schemes
> involving judicial factfinding entail less judicial discretion than indeterminate
> schemes, the constitutionality of the latter implies the constitutionality of the former.
> This argument is flawed on a number of levels.  First, the Sixth Amendment by its
> terms is not a limitation on judicial power, but a reservation of jury power.  It limits
> judicial power only to the extent that the claimed judicial power infringes on the
> province of the jury.  Indeterminate sentencing does not do so.  It increases judicial

20

> discretion, to be sure, but not at the expense of the jury's traditional function of finding the facts essential to lawful imposition of the penalty. Of course indeterminate schemes involve judicial factfinding, in that a judge (like a parole board) may implicitly rule on those facts he deems important to the exercise of his sentencing discretion. But the facts do not pertain to whether the defendant has a legal *right* to a lesser sentence–and that makes all the difference insofar as judicial impingement upon the traditional role of the jury is concerned.

*Blakely*, 542 U.S. at 309 (citation omitted).

Under this reasoning, it is clear that Michigan's indeterminate sentencing guideline scheme, under which the maximum is established by statute and only the minimum term is based on judicial factfinding, does not violate the Sixth Amendment, as both the Sixth Circuit and the Michigan Supreme Court have repeatedly held. *See Montes v. Trombley*, 599 F.3d 490, 496-97 (6th Cir. 2010); *Chontos v. Berghuis*, 585 F.3d 1000, 1002 (6th Cir. 2009); *Drohan,* 475 Mich. at 164, 715 N.W.2d at 791-92; *Claypool*, 470 Mich. at 730 n.14, 684 N.W.2d at 286 n.14. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

G.      *Sufficiency of the Evidence (Claim IV)*

Finally, petitioner contends that the prosecution presented insufficient evidence to prove his guilt beyond a reasonable doubt. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

1.      *Clearly Established Law*

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship*, 397 U.S. 358, 364 (1970) Under the pre-AEDPA standard for habeas review of sufficiency of the evidence challenges, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier

of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).  Reviewing courts must view the evidence, draw inferences and resolve conflicting inferences from the record in favor of the prosecution.  *See Neal v. Morris*, 972 F.2d 675, 678 (6th Cir. 1992).  In determining the sufficiency of the evidence, the court must give circumstantial evidence the same weight as direct evidence.  *See United States v. Farley*, 2 F.3d 645, 650 (6th Cir. 1993).  However, under the amended version of § 2254(d)(1) a federal habeas court must apply a more deferential standard of review of the state court decision.  Thus, the question here is whether the Michigan Court of Appeals's application of the *Jackson* standard was reasonable. *See Gomez v. Acevedo*, 106 F.3d 192, 198-200 (7th Cir. 1997), *vacated on other grounds sub nom. Gomez v. DeTella*, 522 U.S. 801 (1998); *Restrepo v. DiPaolo*, 1 F. Supp. 2d 103, 106 (D. Mass 1998).

While a challenge to the sufficiency of the evidence on an established element of an offense raises a federal constitutional claim cognizable in a habeas corpus proceeding, "[t]he applicability of the reasonable doubt standard . . . has always been dependent on how a State defines the offense that is charged in any given case." *Patterson v. New York*, 432 U.S. 197, 211 n.12 (1977); *see also*, *Jackson*, 443 U.S. at 324 n.16; *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975).  Thus, "[a] federal court must look to state law to determine the elements of the crime." *Quartararo v. Hanslmaier*, 186 F.3d 91, 97 (2d Cir. 1999).

2.    *Analysis*

Petitioner does not challenge the sufficiency of the evidence with respect to any element of the charges against him.  Rather, he contends that the evidence was insufficient to prove his identity as the perpetrator of the crimes.  The Court should reject this claim.  Here, the prosecution presented

22

evidence that petitioner confessed to the crimes through three separate witnesses.  Petitioner's only challenge to this evidence is that the testimony was not credible, and that the two jailhouse informants in particular were thoroughly impeached on cross-examination.  However, it is well-established that a reviewing court, whether on direct appeal or habeas review, "do[es] not make credibility determinations in evaluating the sufficiency of the evidence."  *United States v. Owusu*, 199 F.3d 329, 344 (6th Cir. 2000); *Walker v. Russell*, 57 F.2d 472, 475-76 (6th Cir. 1995); *see also*, *United States v. Bailey*, 444 U.S. 394, 414-15 (1980) ("It is for [jurors] and not for appellate courts to say that a particular witness spoke the truth or fabricated a cock-and-bull story.").  "The fact that the testimony is contradictory does not mean that evidence is insufficient, only that the jury must make credibility determinations."  *Government of the Virgin Islands v. Isaac*, 50 F.3d 1175, 1179 (3d Cir. 1995).  It is the job of the jury, not this Court sitting on habeas review, to resolve conflicts in the evidence, and this Court must presume that the jury resolved those conflicts in favor of the prosecution.  *See Jackson*, 443 U.S. at 326; *United States v. Sherwood*, 98 F.3d 402, 408 (9th Cir. 1996).  Here, the testimony of Francis, Jackson, and Korecki, if believed by the jury, was sufficient to prove petitioner's identity as the perpetrator beyond a reasonable doubt.  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.[3]

---

[3]To the extent petitioner claims that the trial court erred in denying his motion for new trial pursuant to MICH. COMP. LAWS § 770.1 and MICH. CT. R. 6.431(B) because the verdict was against the weight of the evidence or resulted in a miscarriage of justice, the claim is not cognizable on habeas review.  The federal constitution requires only that the evidence be sufficient to sustain the conviction under the standard established in *Jackson v. Virginia, supra.*  Where the evidence is sufficient as a matter of due process, a claim that the verdict was against the weight of the evidence presents a state law issue which is not cognizable on habeas review.  *See Douglas v. Hendricks*, 236 F. Supp. 2d 412, 435-36 (D.N.J. 2002); *Dell v. Straub*, 194 F. Supp. 2d 629, 648 (E.D. Mich. 2002) (Friedman, J.); *Correa v. Duncan*, 172 F. Supp. 2d 378, 381 (E.D.N.Y. 2001); *cf. Tibbs v. Florida*, 457 U.S. 31, 44 (1982) (noting in a different context that "trial and appellate judges commonly distinguish between weight and sufficiency of the evidence.").  In short, "[a] federal habeas court has no power to grant habeas corpus relief because it finds that the state conviction is against the 'weight of the evidence.'"  *Young v. Kemp*, 760 F.2d 1097,

H.      *Recommendation Regarding Certificate of Appealability*

1.      *Legal Standard*

As amended by the Antiterrorism and Effective Death Penalty Act, section 2253 provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1). The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). As the Sixth Circuit has noted, this language represents a codification of the Supreme Court's decision in *Barefoot v. Estelle*, 463 U.S. 880 (1983), and "[t]he AEDPA thus makes no change to the general showing required to obtain a certificate[.]" *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997); *accord Slack v. McDaniel*, 529 U.S. 473, 483 (2000). Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the courts that have considered the issue have concluded that "'[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further."'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996) (quoting *Barefoot*, 463 U.S. at 893 n.4)); *accord Slack*, 529 U.S. at 483-84. Although the substantive standard is the same, "[t]he new Act does, however, require that certificates of appealability, unlike the former certificates of probable cause, specify which issues are appealable." *Lyons*, 105 F.3d at 1073. (citing 28 U.S.C.

1105 (11th Cir. 1985).

§ 2253(c)(3)).

Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254.  The rule tracks § 2253(c)(3)'s requirement that any grant of a certificate of appealability "state the specific issue or issues that satisfy the showing required by § 2253(c)(2)," Rule 11(a), but omits the requirement contained in the pre-amendment version of Federal Rule of Appellate Procedure 22(b)(1) that the court explain "why a certificate should not issue." FED. R. APP. P. 22(b)(1) (version effective prior to 2009 amendment); *see id.*, advisory committee note, 2009 amendments.  In light of the new Rule 11 requirement that the Court either grant or deny the certificate of appealability at the time of its final adverse order, I include a recommendation regarding the certificate of appealability issue here.

    2.    *Analysis*

If the Court accepts my recommendation regarding the merits of petitioner's claims, the Court should also conclude that petitioner is not entitled to a certificate of appealability, for the reasons explained above.  Because (a) there is nothing in the record to suggest that the jury was not unanimous, (b) the record establishes that counsel extensively and thoroughly cross-examined the witnesses, (c) the jury instructions sought by petitioner were not warranted by state law, and (d) counsel's comments were not prejudicial, the resolution of petitioner's ineffective assistance of counsel claims relating to these issues is not reasonably debatable.  Likewise, because counsel had a valid strategic reason for failing to call Bell as a witness, and because there is not a reasonable probability that Bell's testimony would have affected the outcome of the trial, the resolution of

petitioner's ineffective assistance claim based on the failure to call Bell at trial is not reasonably debatable.  With respect to petitioner's prosecutorial misconduct and related ineffective assistance claim, the record establishes that there was testimony that petitioner and Bell were related, and that therefore the prosecutor's statement during closing argument was proper.  Thus, the resolution of this claim is not reasonably debatable.  With respect to petitioner's sentencing claim, because the Supreme Court has repeatedly distinguished maximum and minimum sentences for *Apprendi* purposes, and because the Sixth Circuit has repeatedly held that *Apprendi* does not apply to Michigan's indeterminate sentencing scheme, the resolution of this claim is not reasonably debatable.  Finally, because the testimony of Francis, Jackson, and Korecki, if believed by the jury, established petitioner's identity as the perpetrator, the resolution of petitioner's sufficiency of the evidence claim is not reasonably debatable.  Accordingly, the Court should conclude that petitioner is not entitled to a certificate of appealability.

I.      *Conclusion*

        In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law.  Accordingly, the Court should deny petitioner's application for the writ of habeas corpus.

III.    NOTICE TO PARTIES REGARDING OBJECTIONS:

        The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*,

932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of

objections which raise some issues but fail to raise others with specificity, will not preserve all the

objections a party might have to this Report and Recommendation.  *See Willis v. Secretary of Health*

*& Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local*

*231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any

objections is to be served upon this Magistrate Judge.

> Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: 4/14/11

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record and  by electronic means or U.S. Mail on April 14, 2011.

s/Eddrey Butts
Case Manager

27